**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TRUSSNET USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PETER A LENDRUM and JAMIE R. LENDRUM, husband and wife; RICHARD THOMAS, an individual; GEORGE D. SLESSMAN and SHANNON P. SLESSMAN, husband and wife; WILLIAM D. SLESSMAN and SARAH I. SLESSMAN, husband and wife,<br><br>Defendants. | No. CV-08-1181-PHX-GMS<br><br>**ORDER DENYING MOTION FOR ENTRY OF DEFAULT JUDGMENT WITHOUT PREJUDICE** |

Plaintiff Trussnet USA, Inc. commenced this action on June 25, 2008, by filing a complaint against Peter and Jaime Lendrum, Richard Thomas, George D. and Shannon P. Slessman and William D. and Sarah I. Slessman. (Dkt. #1.) The Complaint asserts that Lendrum, a Vice-President and principal architect of Trussnet's Phoenix office, surreptitiously competed with Trussnet; used Trussnet's employees, including Thomas, and other Trussnet resources in his own enterprises; and diverted business from Trussnet clients, to enrich himself, Thomas, and the other co-defendants. (*See id.*)

1  Defendant Thomas was served by publication on September 9, 2008. (Dkt. # # 30, 2 37.) Thomas has not answered or otherwise responded to the Complaint as required by the 3 Federal Rules of Civil Procedure. The Clerk has entered default against Thomas pursuant 4 to Rule 55(a). (Dkt. # 40.)

5  Plaintiff filed a Motion For Entry of Default Judgement Against Defendant Thomas 6 and For Order Setting Hearing pursuant to Rule 55(b) of the Federal Rules of Civil 7 Procedure. (Dkt. # 41.) No response was filed. Once a party's default has been entered, the 8 district court has discretion to grant default judgment against that party. *See* Fed. R. Civ. P. 9 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In doing so, "the factual 10 allegations of the complaint, except those relating to the amount of damages, will be taken 11 as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

12  Against Thomas, the complaint asserts counts for breach of contract (count 2), breach 13 of the covenant of good faith and fair dealing (count 3), fraud (count 6), actual damages 14 (count 7), aiding in the commission of a tort (count 8), and a RICO violation (count 13). 15 Plaintiff's count for "actual damages" does not appear to constitute a separate claim under 16 Arizona law. Rather, it appears to be designed to invoke certain remedies.

17  Rather than granting a hearing pursuant to Rule 55(b), the Court directed Plaintiff to 18 lodge a proposed form of judgment with documentation substantiating the amount requested 19 in the Motion for Entry of Default Judgment. (Dkt. # 42.) In response, Trussnet filed a 20 Memorandum Supporting Damages on Entry of Default Judgment By The Court Against 21 Defendant Thomas, together with a number of documents that relate to Trussnet's claims 22 against Thomas. (Dkt. # 44.) The Memorandum contains a verification by the Chief 23 Administrative Officer of Trussnet, Isidoro Gutierrez, in which Mr. Gutierrez states under 24 penalty of perjury that he has "read the Memorandum Supporting Damages on Entry of 25 Default Judgement . . . and the supporting documentation and that "they are true and correct 26 to the best of [his] knowledge, information and belief."

27  The Court has reviewed the Memorandum and the attached documents. Those 28 documents establish that Thomas had a written employment agreement with Trussnet, which

- 2 -

obliged him to "devote [his] full business time, attention, skills and efforts to the tasks and duties of your position as assigned by [Trussnet]." (Dkt. # 1.) However, Thomas concealed the fact that he did private work on three private residences for the Slessmans under the auspices of a separate company owned by Lendrum. Lendrum was separately paid for such work by the Slessmans, and Lendrum presumably paid Thomas for his separate work.

Trussnet avows that Lendrum's separate business was separately paid "well over $150,000.00" for the side work they performed for the Slessman's personally, and Trussnet states that it can substantiate to date $144,075.00 in such payments. Trussnet has further established that Lendrum's company billed Thomas' time to the Slessmans at $100 an hour and billed the Slessman's for 230 hours of Thomas' time in 2007 – for 77 hours on the creamery residence, 90 hours on George and Shannon Slessman's residence, and 63 hours on Bill and Sarah Slessman's residence.

In its memorandum, Trussnet also states that Lendrum and Thomas formed an expert witness consulting business during the time that they were supposedly working exclusively for Trussnet. Lendrum and Thomas spent time in September 2007, November 2007, December 2007, and January 2008 on this business. Trussnet avows that Thomas spent 12.5 hours of his time working for this business in January 2008. They further allege that Lendrum's expert witness enterprise earned at least $6725.

Based on these facts, Trussnet apparently seeks three separate damage awards. It seeks an award of $19,094.00 plus attorneys' fees, costs and post-judgment interest on count two for breach of contract. It apparently seeks a single award on counts three, six, seven and eight of $2,190,816.00 plus costs and post-judgment interest, and its seeks an identical damage award on count thirteen for the RICO violation.

Although the Memorandum is far from clear about how Trussnet arrives at these amounts, it appears to the Court that the amounts are derived as follows. For the amount on count two, Trussnet states that Lendrum estimated revenue for 2007 for both the Washington and the Arizona offices of Trussnet. Apparently for 2007, Trussnet's Washington office fell 14% short of Lendrum's revenue projection while the Arizona office fell 61% short of

- 3 -

1  Lendrum's revenue projection.  Thus, in its damage calculations, Trussnet apparently
2  assumes that 14% of Trussnet's underrealization in its Arizona office was due to the same
3  causes that produced a similar underrealization in its Washington office.  It further concludes
4  that the remaining 47% of the percentage amount by which the Phoenix office underrealized
5  Lendrum's estimate was due to Lendrum and Thomas seeking out and obtaining personal
6  business opportunities in breach of their employment contracts.

7  Trussnet asserts that because it paid Thomas $40,626.39 between the time he executed
8  his employment contract and his termination, it is entitled to be reimbursed 47% of that
9  amount or $19,094.00 plus attorneys' fees, costs and post-judgment interest on count two
10  (breach of contract) of its Complaint.

11  Trussnet also seeks an award of  $2,190,816.00 on counts three, six, seven and eight.
12  It apparently calculates this amount in the following manner: because Trussnet asserts that
13  it paid both Lendrum and Thomas $183,457 after they signed their employment contracts,
14  it is entitled to recover 47% of that amount ($86,225), plus the amount earned by the expert
15  witness business ($6725), plus the amount that the Arizona Trussnet office would have
16  earned if it would have met the same percentage of Lendrum's estimated performance as
17  Trussnet's Washington office did ($637,322).  Trussnet totals these figures to arrive at a total
18  of $730,272 in actual damages.  It then seeks to recover twice the actual damage amount in
19  punitive damages.  When the actual and punitive awards are added together it results in a
20  total of  $2,190,816.00.  Trussnet asks that this amount plus costs and post-judgment interest
21  be entered in judgment on counts three, six, seven and eight.

22  Finally on count thirteen Trussnet asks for the $730,272 actual damage figure to be
23  trebled to enter judgment in the amount of $2,190,816.00 on count thirteen plus reasonable
24  attorneys fees and costs and post-judgement interest.

25  Factors the court may consider in deciding whether to grant default judgment include
26  (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency
27  of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning
28

material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Some of the *Eitel* factors favor entering default judgment against Defendant Thomas. These include the possible prejudice to Trussnet and the sufficiency and the apparent merit of at least some of the counts in the Complaint. However, this Court determines that the most significant *Eitel* factors in this case weigh against entering default judgment against Thomas at this time. Predominant among the factors weighing against the entry of default judgment is the amount sought against Thomas in light of his wrongdoing. Further, the basis of Trussnet's calculation of the damages would appear to be subject to some factual disputes, possible double-counting, and other possible assumptions in which, without more, the Court is disinclined to engage. The entry of default judgment is not favored where the amount sought is insufficiently validated. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *13 (N.D. Cal. May 29, 2007) ("[T]he sum of money sought by TG is unreasonable, because it is unsupported by the evidence on record[.]"); *cf. Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, No. C-97-2661-VRW, 1997 WL 7979222, at *1 (N.D. Cal. Dec. 15, 1997) (granting default judgment where amount of money at stake was "reasonable, *properly documented*, and contractually justified") (emphasis added).

At any rate, the appearing defendants will likely have the motivation to appropriately test the presumptions on which Plaintiff has made its damage assertion. In addition, based on the pleadings, some of Trussnet's substantive claims and the claim for punitive damages may be difficult to substantiate against Defendant Thomas. Further, Thomas was only served by publication and thus may not be aware of the actual proceedings against him with a concurrent opportunity to respond to Plaintiff's motion. In this light, the general presumption in favor of resolution of such questions on the merits predominates. *See, e.g.*, *Eitel*, 782 F.2d at 1472. Because Defendants have appeared who will have the ability to challenge Plaintiff's damages presumptions on the merits, these factors, at present, weigh against the entry of default judgment.

Having reviewed Plaintiff's motion and memorandum, and having considered the *Eitel* factors as a whole, the Court concludes that the entry of default judgment is not appropriate at this time. The Court will deny the motion, without prejudice, with respect to Plaintiff's damages.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for default judgment (Dkt. # 41) is **DENIED WITHOUT PREJUDICE**.

DATED this 8th day of December, 2008.

G. Murray Snow
United States District Judge